Filed 6/10/15  In re J.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re J.L., a Person Coming Under the Juvenile Court Law. | |
| | D067169 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3100) |
| v. | |
| T.L., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Mother appeals from a judgment terminating her parental rights and ordering adoption as the permanent plan for her child.[1]  Mother contends the court erred in terminating her parental rights and ordering adoption because the beneficial parent-child relationship exception to adoption applies.  (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i).)[2]  We disagree and affirm the judgment.

BACKGROUND

The San Diego Health and Human Services Agency (Agency) removed the child from mother's care a few days after the child's birth because the child tested positive for cocaine exposure.  The court later declared the child to be a dependent child (§ 300, subd. (b)(1)) and placed the child with maternal grandmother (grandmother).  When mother failed to reunify with the child, the court appointed grandmother the child's guardian. (§ 366.26, subd. (b)(3).)

Although the Agency considered the child adoptable, the Agency recommended guardianship as the child's permanent plan because grandmother was not ready to adopt the child.  According to the Agency, grandmother initially told the social worker "she wanted to be [the child's] guardian.  Then as she saw that [the child's] mother was not sincere in her efforts to reunite with [the child], she decided to adopt [the child].

_____

[1]     We refer to the parties generically to preserve confidentiality.

[2]     Further statutory references are also to the Welfare and Institutions Code unless otherwise stated.

2

However, just as this process began she became unemployed and her housing situation was tentative. She decided that her circumstances were not stable enough to adopt [the child]. Currently [grandmother] is employed and has been able to secure housing. She says that she has not ruled out adopting the child at a later date, but her choice at this time is guardianship."

In its order appointing grandmother guardian, the court found guardianship was in the child's best interest. More particularly, the court found "by clear and convincing evidence, it is likely the child will be adopted, but the child is living with a relative who is unable or unwilling to adopt the child because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing for the child with a stable and permanent environment through legal guardianship and the removal of the child from the custody of the relative would be detrimental to the child's emotional well-being." (§ 366.26, subd. (c)(1)(A).)

More than three years later, mother filed a petition to modify the court's prior guardianship order and have full custody of the child returned to her. (§ 388, subd. (a)(1).) In the declaration she submitted to establish the requisite changed circumstances for the petition, she stated she had a job and a permanent residence. She also stated she was no longer dependent on any substances and had maintained a parental bond with the child. The court set a hearing on the petition, but took the matter off calendar when mother failed to appear for the hearing.

Three months later, mother filed a second petition seeking to modify the court's prior guardianship order and have full custody of the child returned to her. In the

3

declaration she submitted to establish the requisite changed circumstances for the petition, she stated only that she had a parental bond with the child. Unlike in the declaration submitted with her first petition, she did not state she had a job or a permanent residence. She also did not state she was no longer dependent on any substances. The court denied the petition without a hearing because it failed to state a prima facie case. (*In re J.P.* (2014) 229 Cal.App.4th 108, 127 [to have a right to a hearing on a modification petition, the petition must state a prima facie case by alleging facts which, if supported by credible evidence at the hearing, would support a favorable decision on the petition].) Mother is not appealing the denial of the petition.

Meanwhile, the Agency requested the court set a new selection and implementation hearing to reevaluate the child's permanent plan, which the court granted. (§§ 366.3, subd. (c), 366.26, subd. (b).) In reports prepared for the hearing, the Agency recommended the court terminate mother's parental rights and free the child for adoption. According to the reports, the child was then five years old; was happy, energetic, intelligent, and friendly; and did not have any developmental delays or behavioral or emotional concerns. Grandmother was committed to adopting the child. In addition, there were 35 other families in San Diego County willing to adopt a child with the same characteristics. Although mother visited the child, her visits were inconsistent and, at best, occurred once a week. Mother also did not inquire about the child's health and well-being during communications with grandmother between visits. While the child occasionally asked for mother and her presence did not negatively impact him, he regarded grandmother, rather than mother, as his caregiver. The Agency's social worker

4

attempted to contact mother to schedule supervised visits to observe mother with the child; however, mother did not respond to the social worker's attempts, which prevented the Agency from assessing mother's bond with the child.

At the selection and implementation hearing, mother did not object to the admission of the Agency's reports, did not cross-examine the Agency's social worker, and did not present any affirmative evidence. However, mother argued the court should not terminate her parental rights and should keep the guardianship in place because mother visited the child regularly, the child knew she was his mother, the child was older, the child was placed with family, and the guardianship had been effective.

After considering the Agency's reports and the parties' arguments, the court found the child was likely to be adopted, adoption was in the child's best interest, and none of the exceptions to adoption in section 366.26, subdivision (c)(1)(B) applied. Consequently, the court terminated mother's parental rights and ordered adoption as the child's permanent plan.[3]

## DISCUSSION

At the selection and implementation hearing, the court must terminate parental rights and free a child for adoption if it determines by clear and convincing evidence the child is adoptable within a reasonable time, and the parents have not shown termination of parental rights would be detrimental to the child under any of the statutory exceptions to adoption found in section 366.26, subdivision (c)(1)(B)(i) through (vi). (*In re C.F.*

---

[3] The court also terminated father's parental rights. Father has not appealed the court's decision.

5

(2011) 193 Cal.App.4th 549, 553.) The beneficial parent-child relationship exception applies if the parent proves termination of parental rights would be detrimental to the child because the parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

"This court has interpreted the phrase 'benefit from continuing the relationship' in section 366.26, subdivision (c)(1)(B)(i) to refer to a 'parent-child' relationship that 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citation.]

"A parent must show more than frequent and loving contact or pleasant visits. [Citation.] 'Interaction between natural parent and child will always confer some incidental benefit to the child. . . . The relationship arises from day-to-day interaction, companionship and shared experiences.' [Citation.] The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment between child and parent. [Citations.] Further, to establish the [beneficial parent-child relationship] exception the parent must show the child would suffer

6

detriment if his or her relationship with the parent were terminated." (*In re C.F.*, *supra*, 193 Cal.App.4th at p. 555, fn. omitted.)

In this case, the record does not show mother occupied anything other than a nominal parental role in the child's life or that the termination of her parental rights would be detrimental to the child. Rather, the record shows the child knew who mother was, occasionally asked for her, and was not negatively impacted emotionally by her visits, but did not regard her as a caregiver. The record further shows mother's visits with the child were inconsistent and she did not express interest in the child's health and well-being between them. While mother claimed to have a strong bond with the child, she did not provide affirmative evidence of the bond and she prevented the Agency from assessing it by ignoring the Agency's efforts to schedule supervised visitation. Accordingly, she has not established the court erred in determining the beneficial parent-child relationship exception to adoption did not apply.

DISPOSITION

The judgment is affirmed.


MCCONNELL, P. J.

WE CONCUR:

BENKE, J.

MCINTYRE, J.